IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCHLACHTER OPERATING CORPORATION and DANIAL INVESTMENTS LP, </br></br>　　　　　Plaintiffs, </br></br>vs. </br></br>HUSKY VENTURES, INC., </br></br>　　　　　Defendant. | )</br>)</br>)</br>)</br>)</br>)</br>)　　No. CIV-15-525-W</br>)</br>)</br>)</br>) |

## ORDER

This matter comes before the Court on the Motion to Dismiss Count 6 filed by defendant Husky Ventures, Inc. ("Husky"), pursuant to Rule 12(b)(1), F.R.Civ.P. Plaintiffs Schlachter Operating Corporation and Danial Investments LP (collectively "Schlachter") have responded in opposition.

Motions to dismiss for lack of jurisdiction under Rule 12(b)(1), supra, take one of two forms. See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). A defendant may facially attack the factual allegations of the complaint in challenging a court's jurisdiction, or, it may, as in this case, "challenge the facts upon which subject matter jurisdiction is based." Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001)(citing Holt, 46 F.3d at 1003). If a party chooses the second form of attack, the Court is permitted to consider affidavits and other documents submitted by the parties in making its determination. E.g., id.

The documents in this case reveal that as a result of certain pooling orders issued by the Oklahoma Corporation Commission ("OCC"), see, e.g., Doc. 41-1 at 8, ¶ 9, Husky

has been designated unit operator of certain oil and gas wells in the Cimarron and Chisholm Trail Prospects (collectively "Prospects"). Schlachter owns oil and gas leasehold interests in wells operated by Husky that are located within the Prospects (hereafter "Subject Wells").[1] Because Husky allegedly "failed and refused to provide . . . [Schlachter] with appropriate, recordable assignments covering [its] . . . interests in such leases[,]" Doc. 1 at 3, ¶ 10, Schlachter brought suit on May 14, 2015.

In its amended complaint filed on January 20, 2016, Schlachter asserted ten (10) causes of action, seeking both legal and equitable relief. See Doc. 23. In Count 6, which is the subject of the instant motion, Schlachter has alleged that "Husky essentially admitted [in May 2015] that it could not timely pay . . . [vendors'] bills[.]" Id. at 9, ¶ 36. Because each joint operating agreement ("JOA") covering the Subject Wells and related leasehold acreage provides in pertinent part "that 'if [o]perator becomes insolvent . . . it shall be deemed to have resigned without any action by non-operator[s], except the selection of a successor[,]'" id. at 9, ¶ 34 (quotation omitted), Schlachter has prayed for "a declaratory judgment that as of May 2015 or June 1, 2015, Husky was automatically removed as operator under all [pertinent] . . . JOAs . . . ." Id. at 10, ¶ 37.

Husky has argued in its motion that the Court lacks subject matter jurisdiction over Count 6. Because it was designated operator of the Subject Wells by the OCC, Husky has contended Schlachter's "attempt to remove Husky as [o]perator . . . will require this Court to invade the exclusive jurisdiction afforded the [OCC] . . . by [state law] . . . ." Doc. 41 at

---

[1] Husky has advised that it has sold all of its interest in the Chisholm Trail Prospect and no longer operates any wells within that Prospect. It has argued that Schlachter's claim regarding Husky's removal as operator as to those wells is moot. See Doc. 41 at 3 n.2.

2

1.

In Husky Ventures, Inc. v. B55 Investments LTD, No. CIV-15-93-F (W.D. Okla.) (hereafter "B55 Investments"), defendant/counterclaimant B55 Investments LTD ("B55") asserted in its fifth and sixth counterclaims that Husky was "insolvent and [thus] . . . in breach of . . . its duties as operator [of certain oil and gas wells drilled in the Prairie Grove Area of Mutual Interest ('Prairie Grove AMI')] . . . ." B55 Investments, Doc. 24 at 24, ¶ 44. Relying on language in the joint operating agreements, which "provide[d] [that] '[i]f operator becomes insolvent, bankrupt or is placed in receivership, it shall be deemed to have resigned without any action by non-operators, except the selection of a successor[,]'" id. at 24-25, ¶ 45, B55 not only sought a declaration that Husky was in fact insolvent and therefore "deemed to have resigned as operator of the Prairie Grove AMI . . . ," id. at 27, ¶ 48, but also "ask[ed] that Husky be removed as operator and enjoined from interfering with present and/or future operations." Id. at 29, ¶ 56. Husky challenged the court's jurisdiction and argued that the OCC had exclusive jurisdiction over these counterclaims, see B55 Investments, Doc. 52; the Honorable Stephen P. Friot, to whom the case had been assigned, agreed. See B55 Investments, Doc. 97.

In an Order dated December 23, 2015, he wrote that extant state law unequivocally holds that "'[o]nce created by the [OCC] . . . , [a] . . . unit operator's status cannot pass to another via private-contract arrangement.'" Id. at 6[2] (quoting Crest Resources and Exploration Corp. v. Corporation Commission, 617 P.2d 215, 217 (Okla. 1980)). Based on

---

[2]Private contracts, however, may be used to "flesh out" OCC pooling order arrangements, and "the parties' rights and obligations under th[ose] contract[s] would be a matter for determination in the . . . courts[.]" Samson Resources Co. v. Corporation Commission, 702 P.2d 19, 21 (Okla. 1985)(citing Tenneco Oil Co. v. El Paso Natural Gas Co., 687 P.2d 1049 (Okla. 1984)).

that law, Judge Friot determined that "passing Husky's operator status to another via a private contract [was] . . . exactly what B55 [has sought] . . . to do in the fifth and sixth counterclaims." Id. He concluded that the OCC therefore "ha[d] exclusive jurisdiction over the fifth and sixth counterclaims, which effectively [sought] . . . relief by way of ouster of a[n] [OCC]-designated operator[,]" id., and dismissed the two counterclaims for lack of subject matter jurisdiction. See id.

Schlachter has argued in the case-at-bar that it is not asking the Court to remove Husky as operator; rather, it has advised that it is seeking only "a ruling that Husky's admitted and proven inability to pay vendors' invoices as they became due establishes a prima facie case that Husky [is] . . . insolvent under Oklahoma law," Doc. 53 at 2 (citation omitted), and consequently, "is deemed to have resigned as a matter of law, and . . . is not entitled to that income which it received from participants as operator after having resigned." Id.

Upon review, the Court finds that while Schlachter is not expressly asking this Court to remove Husky, it is, through artful pleading, seeking, as Judge Friot described the relief requested by B55 in its counterclaims, "declarations which are predicates to removing Husky as operator[.]" B55 Investments, Doc. 97 at 2. Since these declarations would "effectively . . . oust[ ] . . . a[n] [OCC]-designated operator," id. at 6, the Court, like Judge Friot, finds the OCC has exclusive jurisdiction. E.g., Hold Oil Corp. v. Corporation Commission, 746 P.2d 692 (Okla. App. 1987)(where operator designated by OCC, and not appointed by private agreement, OCC has exclusive jurisdiction).

Accordingly, the Court GRANTS Husky's Motion to Dismiss Count 6 [Doc. 41] filed on May 26, 2016, and DISMISSES Count 6 of Schlachter's amended complaint without prejudice for lack of subject matter jurisdiction.

ENTERED this 30th day of June, 2016.

LEE R. WEST
UNITED STATES DISTRICT JUDGE